UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| HENRY GONZALEZ RENDON, )<br>a/k/a, Jose R Matosrivera, )<br>a/k/a, Alfredo Vigomontalvo, )<br>　　　　　　　　　　　　　　　　 )<br>　　　　Petitioner, )<br>　　　　　　　　　　　　　　　　 )<br>　　v. )<br>　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　 )<br>UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　　　　　 )<br>　　　　Respondent )  | 2:13-cr-00113-GZS<br>2:15-cv-00039-GZS |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Henry Gonzalez Rendon, also known as Jose R[.] Matosrivera and Alfredo Vigomontalvo,[1] moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 46.) Petitioner pled guilty, pursuant to a "fast-track" plea agreement,[2]

---

[1] According to the revised modified presentence investigation report, Petitioner's other aliases include the following: Jose Matos Rivera, Cesar Batista, Rodney Touset, Henry Gonzalez, Rodney Tesset, Jesus Ramos, and Henri Gonzalez-Rondon. The report also provides a date of birth of April 1, 1975, and the following alternate alias dates of birth: 5/1/75; 9/14/77; 8/16/72; 8/23/77; 5/18/78; and 9/18/78.

[2] The fast-track provision of the sentencing guidelines, U.S.S.G. § 5K3.1, provides: "Upon motion of the Government, the court may depart downward not more than **4** levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

"Early disposition or 'fast-track' programs permit prosecutors to provide the prospect of shorter sentences in return for prompt guilty pleas and, in some cases, waiver of appellate rights." *United States v. Ozuna-Cabrera*, 663 F.3d 496, 503 n.7 (1st Cir. 2011). In *United States v. Rodríguez*, 527 F.3d 221, 223 (1st Cir. 2008), the First Circuit explained the context in which fast-track programs developed:

> Early disposition programs, also known as fast-track programs, date back to the mid-1990s. They popped up spontaneously in federal district courts along the border between the United States and Mexico as part of an effort to manage burgeoning immigration caseloads. *See e.g.*, *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006). Typically, prosecutors would use charge-bargaining or plea-bargaining techniques to hold out the prospect of shorter sentences in return for prompt guilty pleas and waivers of appellate rights. *See id.*

to the charge of being present in the United States after having been removed or deported, in violation of 8 U.S.C. § 1326(a). (Indictment, ECF No. 1; Plea Tr., ECF No. 34 at 6, 21, 22; Judgment, ECF No. 26 at 1.) Petitioner was subject to a statutory maximum penalty of twenty years under 8 U.S.C. § 1326(b)(2),[3] based on a prior conviction of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43).[4] (Indictment at 1-2; Judgment at 1.)

Petitioner complied with his obligations under the fast-track plea agreement, and on that basis the Government moved for a two-level downward departure from the otherwise applicable sentencing guidelines range.[5] (Motion for Downward Departure, ECF No. 22.) The Court denied

---

[3] Title 8 U.S.C. § 1326 states in pertinent part:

>  (a) In general
>
>  Subject to subsection (b) of this section, any alien who--
>
>  > **(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>  >
>  > **(2)** enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
>  shall be fined under Title 18, or imprisoned not more than 2 years, or both.
>
>  (b) Criminal penalties for reentry of certain removed aliens
>
>  Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
>
>  . . .
>
>  > **(2)** whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both.

[4] Under 8 U.S.C. 1101(a)(43), a number of offenses are defined as aggravated felonies; the indictment does not identify the offense that qualified as an aggravated felony. (Indictment, ECF No. 1.) Petitioner received a three-year sentence for cocaine distribution in California. (Prosecution Version, ECF No. 16 at 1.) Under section 1101(a)(43)(B), illicit trafficking in a controlled substance is an aggravated felony.

[5] In Petitioner's direct appeal, the First Circuit refers to the Government's motion as the parties' joint request. *United States v. Gonzalez Rendon*, No. 13-2336 (1st Cir. Oct. 20, 2014). (Corrected Judgment of USCA, ECF No. 38 at 1) (noting that the judgment was corrected to reflect the correct "cc list").

the Government's motion because Petitioner had an "extensive criminal history," he had reentered the country twice illegally, and his purpose for reentry was solely to sell drugs illegally. (Sentencing Tr., ECF No. 35 at 15; Oral Order, ECF No. 25.) The Court sentenced Petitioner to a term of 57 months of imprisonment, with no supervised release. (Sentencing Tr. at 24.) Petitioner appealed from the sentence, and the First Circuit affirmed. *United States v. Gonzalez Rendon*, No. 13-2336 (1st Cir. Oct. 20, 2014).

In his section 2255 motion, Petitioner claims that the attorney who represented him during the plea process and at sentencing was constitutionally ineffective because he failed to "enforce" Petitioner's fast-track plea agreement. (Motion, ECF No. 46 at 4.) In addition, Petitioner alleges that appellate counsel failed to argue that Petitioner's plea and sentencing counsel provided ineffective assistance. (*Id.*) Petitioner also asserts various additional claims of ineffective assistance of counsel, and he contends that his plea was involuntary. Petitioner, however, did not include any factual allegations in support of the additional claims.

The Government has moved for summary dismissal of Petitioner's section 2255 motion. (Response, ECF No. 53.) After a review of Petitioner's motion and the Government's request for dismissal, I recommend that the Court grant the Government's request and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[6]

At all times relevant to the judgment that Petitioner challenges in his section 2255 motion, Petitioner was a citizen of the Dominican Republic with no legal status in the United States. (Prosecution Version, ECF No. 16 at 1.) In 2003, a United States immigration judge ordered Petitioner removed from the United States and returned to the Dominican Republic. (*Id.*) At that

---

[6] The following factual background is from the prosecution version, which Petitioner told the Court in his plea colloquy was true to his personal knowledge. (Prosecution Version, ECF No. 16; Plea Tr. at 13-14.)

time, Petitioner was not in custody. (*Id.*) Petitioner failed to comply with the removal order, and his whereabouts were unknown until he was arrested in California in 2006 on a drug-related charge. (*Id.*) In 2006, Petitioner was convicted in state court in California of the felony offense of transporting controlled substances for sale, and he was sentenced to three years in prison. (*Id.*) In February 2008, pursuant to the 2003 removal order, Petitioner was placed on an airplane and removed from the United States, with the destination the Dominican Republic. (*Id.*) In July 2012, officers of the Old Orchard Beach (Maine) Police Department arrested Petitioner on drug-related charges. (*Id.*) Petitioner had not applied to the United States Government, or received permission from the Government, to enter the United States. (*Id.* at 1-2.)

Petitioner was indicted in June 2013 for a violation of 8 U.S.C. § 1326(a), subject to the penalty provision of § 1326(b)(2). (Minute Entry, ECF No. 8; Indictment, ECF No. 1.) Counsel was appointed at Petitioner's initial appearance. (Minute Entry, ECF No. 8.)

In July 2013, Petitioner entered into a plea agreement with the Government, and the Court held a change of plea hearing, pursuant to Fed. R. Crim. P. 11, at which the Court accepted Petitioner's guilty plea. (Plea Agreement, ECF No. 17; Plea Tr. at 1, 22.) In paragraph 3 of the plea agreement, the parties addressed the fast track status as follows:

<u>Fast Track Agreements</u>.  The parties agree as follows:

A. Defendant will enter a guilty plea to the charged offense as soon as the case can reasonably be scheduled;

B. Defendant agrees not to file any of the motions described in Fed. R. Crim. P. 12(b)(3);

C. Defendant agrees to waive the right to argue for a variance under 18 U.S.C. 3553(a); and

D. Defendant agrees to waive the right to appeal his sentence and the opportunity to challenge his conviction under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

(Plea Agreement at 2.) In return for the waiver of these rights, the Government promised to seek a downward departure:

> Downward Departure. The government agrees that, if Defendant satisfies all of the terms and conditions of this agreement, it will file a motion pursuant to U.S.S.G. § 5K3.1 seeking a downward departure of two levels from the otherwise applicable offense level.

(*Id.*)

At the plea hearing, the Court engaged in a colloquy with Petitioner regarding the downward departure.[7] (Plea Tr. at 15-17.) At the conclusion of the plea hearing, the Court

---

[7] The following is the colloquy regarding the downward departure.

THE COURT: . . . You've entered into a fast track plea agreement with the Government and what it says is that you're entering a guilty plea, you're not going to file any motions and you're not going to argue for a variance, variant sentence, which is a lesser sentence, and you're going to waive your right of appeal on your conviction; do you understand all of that?

    THE DEFENDANT: I understand.

    THE COURT: Now, normally you would have a right to appeal your conviction; do you understand that?

    THE DEFENDANT: Yeah, I understand.

    THE COURT: In this case, you're giving up that right; do you understand that?

    THE DEFENDANT: I understand.

    THE COURT: You discussed this with your attorney?

    THE DEFENDANT: Yes.

    THE COURT: And you understand that?

    THE DEFENDANT: Yes, I understand.

    THE COURT: Also, in return for all of that, the Government's going to file a motion to lower your sentence, to depart downward on that; do you understand that?

    THE DEFENDANT: Yes, I understand that.

    THE COURT: That's what you're getting in return for that from the Government.

    THE DEFENDANT: I'm sorry, that's something my lawyer say to – explained to me. Me doing this now is good, is good for myself.

5

accepted Petitioner's guilty plea on the bases that (1) Petitioner acknowledged that he was in fact guilty, (2) there was a factual basis for the plea, (3) Petitioner was competent to enter a plea, (4) Petitioner was aware of his right to a trial and the other rights associated with the right to a trial, (5) Petitioner was aware of the maximum possible punishment that could be imposed, and (6) Petitioner entered his plea voluntarily and knowingly. (*Id.* at 21-22.)

The revised modified presentence investigation report, prepared by the United States Probation Office, calculated the guidelines range as follows: Petitioner's base offense level was 8, pursuant to U.S.S.G. § 2L1.2(a). Sixteen levels were added, pursuant to section 2L1.2(b)(1)(A)(i), because Petitioner previously was deported or unlawfully remained in the United States after he had been convicted of a felony drug trafficking offense. Three levels were subtracted for acceptance of responsibility, resulting in a total offense level of 21. Petitioner's criminal history

---

THE COURT: Okay. You'll be benefitted by the Government's motion to depart downward.

THE DEFENDANT: Yes, it's better for me.

THE COURT: Now, I want you to understand something though. When the Government makes a motion to depart downward to give you a lesser sentence, I'm the one who has to decide whether I wish to allow that; do you understand?

THE DEFENDANT: I heard that through – my lawyer explained that to me, okay.

THE COURT: And I don't have to agree; do you understand that?

THE DEFENDANT: I understand that, too, sir.

THE COURT: And if I don't agree, that means you don't get the downward departure; do you understand?

THE DEFENDANT: I understand that.

THE COURT: And if I don't agree, I'm not going to let you take back your guilty plea; do you understand?

THE DEFENDANT: I understand.

(Plea Tr., ECF No. 34 at 15-17.)

category was III which, when combined with a total offense level of 21, yields a guideline range of 46 to 57 months of imprisonment.

According to the report, the Probation Office found no factors under 18 U.S.C. § 3553(a) that would justify a non-guidelines sentence; in other words, the Probation Office did not express support for the downward departure provision of the plea agreement. Petitioner submitted several objections to the initial report; the revised report asserts that all objections were resolved through alteration of the report, and at the sentencing hearing, Petitioner told the Court that he did not object to the revised report.[8] (Sentencing Tr. at 8.)

Before the sentencing hearing, the Government filed its motion for a downward departure of two levels from the otherwise applicable guidelines range. (Motion, ECF No. 22.) In its motion, the Government asserted that Petitioner (1) had timely entered a guilty plea; (2) had filed no motions pursuant to Fed. R. Crim. P. 12(b)(3); (3) had not requested a variant sentence; and (4) had waived his right to appeal his sentence. (*Id.* at 1.) The Government thus argued that Petitioner met the Government's requirements for the downward departure. (*Id.*)

At the sentencing hearing, the Government explained that it had requested a two-level reduction, rather than a four-level reduction, due to a prior drug offense. (Sentencing Tr. at 4-5, 14.) The Court noted that without the two-level downward departure, the guideline range would be 46 to 57 months of imprisonment, but with the departure, the level would be 37 to 46 months. (Sentencing Tr. at 6.) The Government explained that it determined that a two-level downward departure was appropriate because of the lengthy guidelines range.[9] (*Id.* at 9-10.)

---

[8] At Petitioner's request, the Court noted at sentencing that it would not take into account a reference in the revised report regarding a prior offense, specifically, a statement that officers saw Petitioner drive into an alley and throw a large object out of the driver's side window, that the officers could not retrieve the item, but that they believed it may have contained two pounds of methamphetamine. (Sentencing Tr., ECF No. 35 at 18-19.)

[9] At sentencing, the Government explained the administrative history of the fast-track policy. (Sentencing Tr. at 3-5.) In 2012, the Deputy Attorney General directed that every United States Attorney's Office have a fast-track policy for

Petitioner's counsel argued at sentencing that the downward departure was warranted, given that Petitioner did not have a history of violent crime, he regretted his actions, he would be serving a significant amount of time, and it was costly to incarcerate a person who would be deported at the end of incarceration. (*Id.* at 13-14, 19.)

The Court denied the Government's motion for a two-level downward departure. (Oral Order, ECF No. 25.) The Court found the facts as set forth in the presentence investigation report as amended, and noted that it had taken into account the sentencing factors set forth in 18 U.S.C. §3553(a), particularly the history of Petitioner, the seriousness of the offense, just punishment, the need for deterrence, and the need to protect the public from Petitioner. (*Id.* 22-24.) In denying the Government's motion, the Court reasoned that Petitioner had an extensive criminal history, he had two illegal reentries into the United States, and his reentries into the country were solely to sell drugs. (Sentencing Tr. at 15.)[10] The Court imposed a sentence of 57 months of imprisonment, with no supervised release, noting that Petitioner will be deported at the end of his incarceration. (Sentencing Tr. at 24; Judgment at 2.) The Court explained to Petitioner that he had given up his right to appeal the sentence, but that he had retained his right to appeal the conviction. (Sentencing Tr. at 25.)

Despite Petitioner's waiver of his right to appeal from the sentence, he appealed from the sentence. *United States v. Gonzalez Rendon*, No. 13-2336 (1st Cir. Oct. 20, 2014). New counsel, appointed on appeal, filed a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), informing the First Circuit that counsel could find no nonfrivolous issue to appeal. *United States v. Gonzalez*

---

defendants charged solely with entry after deportation. (*Id.* at 3-4.) The Government explained that although the United States Attorney's Office was required to have the policy, it had the discretion in any given case to refrain from filing a motion for a downward departure if it concluded that the circumstances were not appropriate for a departure. (*Id.* at 9.)

[10] The Court also entered a statement of reasons. (Statement of Reasons & Exhibit A to Statement, ECF No. 27.)

*Rendon*, No. 13-2336 (1st Cir. Oct. 20, 2014). In a pro se supplemental brief, Petitioner argued that (1) this Court erred in denying the Government's motion for a downward departure under the fast-track program, and (2) Petitioner was required to serve a longer term than defendants sentenced for identical crimes in other states that have implemented the fast-track program. The First Circuit affirmed, reasoning that Petitioner had waived his right to appeal, and, even if the appeal waiver had not been effective, this Court did not commit error or abuse its discretion when it denied the motion for a downward departure. *Id.*

## II. DISCUSSION

### A. Legal Standard for Claims of Ineffective Assistance of Counsel

An individual may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[11] To the extent that Petitioner alleges ineffective assistance of counsel, his right to counsel is guaranteed by the Sixth Amendment, and, therefore, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause'

---

[11] Title 28 U.S.C. § 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v Carrier*, 477 U.S. 478, 485, 496 (1986) (citation omitted)).

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "[A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'" *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range

of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). "Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies." *Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000).

In reviewing claims of ineffective assistance of counsel, courts should be mindful that "'[c]ounsel is not required to waste the court's time with futile or frivolous motions.'" *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)); *see Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

A district court that reviews claims of ineffective assistance of counsel is not required to address both prongs of the test, because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954). *See David*, 134 F.3d at 478 ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings."

### B. Claims and Analysis

#### 1. Claim of ineffective assistance of plea and sentencing counsel and appellate counsel regarding the fast-track plea agreement

Petitioner's ineffective assistance claim fails for three distinct reasons. First, the First Circuit upheld this Court's denial of a sentencing departure in Petitioner's direct appeal. *Gonzalez Rendon*, No. 13-2336 (1st Cir. Oct. 20, 2014) ("[E]ven if the appeal waiver were not effective, we see no error or abuse of discretion in the district court's denial of the parties' joint request for a sentencing departure.") "'[I]ssues disposed of [on] a prior appeal will not be reviewed again by way of [a 28 U.S.C. § 2255] motion.'" *See Singleton v. United States,* 26 F.3d 233, 240 (1st Cir.1994) (quoting *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967)).

Second, Petitioner's underlying argument that he is entitled to a fast-track downward departure lacks merit. Petitioner relies on *United States v. Rodríguez*, 527 F.3d 221 (1st Cir. 2008) in support of his claim. (Motion at 4, 12-13.) In *Rodríguez*, the First Circuit abrogated *United States v. Andújar-Arias*, 507 F.3d 734 (1st Cir. 2007), in which a panel of the First Circuit had held "that sentencing disparity attributable to the selective inauguration of so-called 'fast-track' programs for the processing of immigration crimes could not form the basis for a variant sentence." *Rodríguez*, 527 F.3d at 222 (citing *Andújar-Arias*, 507 F.3d. at 739). *Rodríguez* involved a direct appeal from a sentence in the District of Puerto Rico, where a fast-track program had not been adopted. *Id.* at 223. The First Circuit held that the panel's holding in *Andújar-Arias* did not survive two subsequent United States Supreme Court cases: *Gall v. United States*, 552 U.S. 38 (2007); and *Kimbrough v. United States*, 552 U.S. 85 (2007). *Rodríguez*, 527 F.3d at 222. In *Rodríguez*, the First Circuit held that district courts may take into account disparities among districts in the implementation of fast-track programs. *Id.* at 229-31.

However, the Court in *Rodríguez* also recognized that "the district court can make its own independent determination as to whether or not a sentence tainted by the alleged disparity is nonetheless consistent with the centrifugal pull of the constellation of [18 U.S.C. §] 3553(a) factors." *Id.* at 231. The Court vacated the sentence and remanded for resentencing based on its conclusion that the district court "committed procedural error in refusing to consider the appellant's argument that he should receive a variant sentence because of the disparity incident to the lack of a fast-track program in the District of Puerto Rico." *Id.*

Petitioner's case is distinguishable from *Rodríguez* because in Maine, unlike Puerto Rico at the time *Rodríguez* was decided, a fast-track program has been implemented. Because the fast-track program had been adopted in Maine, there is no *Rodríguez*-style disparity to evaluate.

Although *Rodríguez* is distinguishable, the case nonetheless supports this Court's discretionary decision not to grant a two-level reduction in the offense level. "[S]entencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate." *Rodríguez*, 527 F.3d at 231. In Petitioner's case, the parties did not disagree on the operation of the two-level fast-track reduction, but rather jointly requested a downward departure. Notwithstanding the joint request, this Court had the discretion to deny the motion. "While the decision to institute a fast-track program in a particular judicial district is the Attorney General's, the ultimate authority to grant a fast-track departure lies with the sentencing court." *Id.* at 230. Consistent with *Rodríguez*, this Court exercised its sentencing authority and its discretion when it determined that a two-level fast-track reduction was inappropriate due to Petitioner's extensive criminal history, his two illegal entries into the country, and his illegal purpose. (Sentencing Tr.

13

at 15.) Given that Petitioner's underlying argument lacks merit, his claim of ineffective assistance of counsel also fails. *See Tse*, 290 F.3d at 465.

Third, although the Court did not grant the downward departure, the record reflects that counsel's efforts to obtain the departure were not deficient, nor was Petitioner prejudiced. During the plea process, counsel successfully obtained a plea agreement that included a fast-track downward departure. (Plea Agreement at 2.) At the sentencing hearing, counsel argued for a downward departure under the fast-track program in part citing Petitioner's lack of violent crime history.[12] (Sentencing Tr. at 12-14.) That counsel's argument ultimately did not succeed does not support the conclusion that counsel's performance was constitutionally deficient. *See Moreno-Espada*, 666 F.3d at 65.

Furthermore, counsel's performance was not deficient simply because counsel did not argue, in Petitioner's direct appeal, that this Court abused its discretion when it denied the parties' requested downward departure. *See Rodríguez*, 527 F.3d at 231. Petitioner's potential abuse of discretion argument would have been futile. "[A]n abuse of discretion occurs when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." *United States v. Gilbert*, 229 F.3d 15, 21 (1st Cir. 2000) (quotation marks omitted). Counsel may decide to forego, and is expected to forego, weak claims on appeal. *Burger v. Kemp*, 483 U.S. 776, 784 (1987).

Finally, Petitioner includes a number of sentencing-related ineffective assistance claims that he fails to support with factual allegations. (Motion at 16.) In particular, Petitioner contends

---

[12] The Court pointed out, however, and counsel acknowledged, that the revised modified presentence investigation report referenced a prior arrest following a search in which officers found a sawed-off shotgun in a residence where officers also found drug packaging materials and several hundred dollars. (Sentencing Tr. at 13.)

14

that (1) counsel failed to consult with Petitioner in preparation for sentencing; (2) counsel failed to conduct an adequate investigation of mitigating issues in preparation for sentencing; (3) counsel failed to advance meritorious grounds for a downward departure based on Petitioner's family background and the conditions of his pre-trial confinement; and (4) counsel failed to challenge the 16-level aggravating enhancement at sentencing. (*Id.*) Petitioner's claims fail because Petitioner offers only generalities that lack specific factual support, and the claims are refuted by the record.[13] *See Moreno-Morales*, 334 F.3d at 145; *David*, 134 F.3d at 478.

### 2. Claim that appellate counsel failed to raise a claim of ineffective assistance of plea and sentencing counsel

Petitioner argues that appellate counsel was ineffective because counsel failed to argue that plea and sentencing counsel was ineffective. (Motion at 4.) First, appellate counsel could not have successfully raised an ineffective assistance claim for the first time on a direct appeal. The First Circuit has explained: "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court. *United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir. 1993) (noting that an exception exists "when the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim," and holding that because the record was not sufficiently developed in that case, a claim of ineffective assistance of counsel was not ripe for decision on appeal). In addition, because, as explained above, Petitioner could not prevail on his claim that his plea and sentencing counsel was

---

[13] Counsel consulted Petitioner in preparation for sentencing. (Plea Tr. at 8.) Counsel did not inappropriately fail to conduct an adequate investigation of mitigating issues in preparation for sentencing or fail to advance Petitioner's family background or pre-trial issues, because, under the plea agreement, Petitioner was not permitted to argue for a variance pursuant to 18 U.S.C. §3553(a) or to file motions under Fed. R. Crim. P. 12(b)(3). (Plea Agreement, ECF No. 17 at 2; Sentencing Tr. at 3.) Counsel did not inappropriately fail to challenge the 16-level enhancement; in response to the Court's inquiry, Petitioner told the Court that he had no objections to the revised presentence investigation report, which included the 16-level enhancement. (Sentencing Tr. at 7-8.)

ineffective, Petitioner's contention that the performance of his appellate counsel was deficient also must fail.[14]

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. I recommend that the Court deny Petitioner's 28 U.S.C. § 2255 motion, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of September, 2015.

---

[14] To the extent Petitioner asserts a free-standing claim, independent of any claim of ineffective assistance of counsel, that his plea was not knowing and voluntary, the claim also fails. Petitioner alleges no facts to support a claim of an involuntary plea, but even if he had, the claim is procedurally defaulted because he failed to raise it in a direct appeal, and he has failed to demonstrate cause for the default. *See Cody v. United States*, 249 F.3d 47, 52 (1st Cir. 2001) (holding that the petitioner was procedurally barred from raising a freestanding claim, in a section 2255 motion, that his plea was involuntary). Furthermore, the plea agreement provides that Petitioner agreed to waive "the opportunity to challenge his conviction under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." (Plea Agreement at 2.)

16